NORTHERN ENGINEERING COMPANY, INC. AND AN-
OTHER v. JOHN W. NEUKOM AND ANOTHER.
CITY OF MANKATO, GARNISHEE.
JARL W. HANSON AND C. G. LINDQUIST, INTERVENERS.[1]

May 16, 1941.

No. 32,832.

*Rollo N. Chaffee* and *Fryberger, Fulton & Boyle,* for appellants.
*Lathers & Hoag* and *Loyd J. Palmer,* for respondent. ·

HOLT, JUSTICE.

In an action brought by Northern Engineering Company against
John W. Neukom, a judgment was entered for the latter and

[1]Reported in 298 N. W. 47.

against the former on December 29, 1937, for $1,130.45. Thereafter Neukom garnisheed the city of Mankato, serving garnishee summons on July 9, 1938. There was a disclosure and stipulation that the garnishee pay over $1,181.75 to C. G. Lindquist, to be held to abide the court's decision in the garnishment. Therein Jarl W. Hanson filed a complaint in intervention and so did C. G. Lindquist as trustee in bankruptcy of Northern Engineering Company. The complaints in intervention were answered and the issues tried to the court. Findings were made awarding the $1,181.75 to defendant Neukom. There was no decision as to intervener Hanson, and no further reference will be made to his claim. Intervener Lindquist moved for a new trial or amended findings and, being denied, appeals from the judgment.

A short resumé of the findings will suffice. July 27, 1937, the city of Mankato entered a written contract with the Northern Engineering Company, hereinafter referred to as the company, whereby the company, which owned the exclusive license and right to make, use, and sell water treatment plans employing the Zapffe Catalytic Process for removal of iron and manganese from water supplies by catalysis, covered by United States letters patent No. 1,990,214, issued to Carl Zapffe, February 5, 1935, sold to the city of Mankato a license or right to install the Zapffe process for the removal of iron and manganese from the city's water supply for the sum of $14,038, which sum the city agreed to pay therefor. To that agreement was attached a license agreement, also signed by both the company and the city, specifying the same terms as to price and time of payment. One-half the price was paid in 1937, and $3,509.50 was paid April 12, 1938. August 18, 1938, Neukom caused execution on his judgment against the company to be issued and levied on the debt due it from the city of Mankato. On December 15, the company was adjudged a bankrupt in the district court of the United States for the district of Minnesota.

The contention of the intervener Lindquist, at the trial and on this appeal, is that the company had not fully performed what it by said contract and license agreed to do at the time the garnishee

was served with summons; that the system installed had not been tried out as provided; hence the payment of the balance of the purchase price rested on a contingency and was not subject to garnishment. The two findings refuting that position, and which are challenged by the assignments of error, are:

"That on July 9, 1938, all of the things to be done by Northern Engineering Company under said contract for license had been substantially performed or waived and the payment of the balance due it under said contract from said city of Mankato awaited only the acceptance of said plant by the city of Mankato and was not contingent.

\* \* \* \* \* \*

"That on said date the city of Mankato had waived the performance of said provisions by said company and that the requirements of said paragraphs E and F were of a minor nature and not substantial requirements of said contract."

According to intervener's contention, these are the provisions of the contract which the company had not performed when the garnishee summons was served:

"(b) Furnish inspection and laboratory tests of the process materials before placing, and supervise their proper placement;

"(e) Furnish instruction to the operating personnel for a period sufficient to enable them to efficiently operate the plant and become thoroughly familiar with the details of its operation and maintenance. (An experienced operator will be furnished for not to exceed ten (10) days for this purpose.)

"(f) Arrange that Carl Zapffe, of Brainerd, Minnesota, the originator of the process herein referred to, shall visit the plant once during construction (at such time as the City may request), and once during the test period of operation (at such time as the City may request) for the purpose of inspection and consultation with representatives of the City."

332

The company was not doing any work for or furnishing any materials to the city of Mankato with reference to the installment of the Zapffe process. It furnished only the needful drawings. As to the (b) provision above, the evidence sustains the finding that there had been substantial compliance therewith. The city engineer of Mankato, in charge of the installation of the Zapffe process for the city, testified that the laboratory tests referred to in (b) were not required because the companies from which the city bought the process materials furnished the city with the laboratory tests. He also testified that the contract with the company was practically completed on July 9, 1938, except that there were some small matters the company was willing to furnish the city that were not called for, and that the city did not deem it necessary to have Mr. Zapffe come to Mankato. And as to furnishing instruction to the personnel pursuant to (e), it was not necessary because "we made two trips to Brainerd and inspected a plant similar to this at that place, that is, with regard to the general knowledge of the mechanical and engineering features of it. We deemed it was not necessary to have someone come down and show us how to operate it." Of course there was no resolution of the city council waiving these conditions of the contract, but it is clear that when a city engineer is in charge of installing a process for purifying the city's water system it must be assumed, until the contrary appears, that he is competent as an expert to do the work, and that what he did protected the city to the satisfaction of the city council. Evidently the city engineer did not deem it needful to have the inspections and consultations specified in (f) with Mr. Zapffe. We think the evidence fully justifies the findings above quoted that what the company was to do under its contract had been fully completed or waived at the time the garnishee summons was served.

But the intervener further urges that the last payment was contingent upon the outcome of the test and acceptance of the process installed as provided in "(c) Twenty-five (25) per cent thereof ($3,509.50) on or before the date of the acceptance by the city from

the company of the completed plant, based on an operating period of not to exceed sixty (60) days from the date of the initial operation of said plant." The contract was only a sale of the right or license to install a patented process to purify the city's water supply. When the company had completed what it was obligated to do, as the court found, there was no contingency as to the obligation of the city to pay the balance of the price for the license. The company did not agree to make the process operate to the satisfaction of the city. The last payment was a fixed obligation even if the time of payment were postponed. This was not a construction contract where there is some provision to so perform that the result will be satisfactory to the other party to the contract, or where there are some conditions precedent to the payment of an installment, or where payment is made dependent on satisfactory proof of nonexistence of lien claims. We think the trial court rightly concluded that the $1,181.75 due the company from the city was lawfully attached by the service of the garnishee summons on July 9, 1938, under 2 Mason Minn. St. 1927, § 9360, providing:

"Money or any other thing due or belonging to the defendant may be attached by this process before it has become payable, if its payment or delivery does not depend upon any contingency."

See also § 9361(1), providing that no person shall be adjudged a garnishee "unless at the time of the service of the summons" the debt due the defendant [here the company] is due absolutely, and without depending on any contingency." The city owed the company $1,181.75, without any contingency when the garnishee summons was served. Gilloley v. Sampson, 203 Minn. 233, 281 N. W. 3; Knudson v. Anderson, 199 Minn. 479, 272 N. W. 376.

Intervener relies on Bacon v. Felthous, 103 Minn. 387, 115 N. W. 205; National Exchange Bank v. Solberg, 175 Minn. 436, 221 N. W. 677; S. T. McKnight Co. v. Tomkinson, 209 Minn. 399, 296 N. W. 569. The Felthous case is not at all in point. The Solberg case involved a construction contract providing for the payment of all

bills for material and labor used before the contract was to be considered completed. And in the McKnight case the funds garnished were held by the garnishee as collateral for the defendant's obligations, and since their future payment or delivery to defendant was entirely dependent upon certain other pledged collateral there was nothing reached by the garnishment. We think the findings first set out are sustained and are decisive of the appeal.

Having concluded that the garnishment lawfully impounded the funds of the company owing from the garnishee, *viz.*, $1,181.75, on July 9, 1938, more than four months prior to the bankruptcy adjudication of the company, such adjudication did not in any manner disturb the garnishment.

The judgment is affirmed.